**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, <br><br>             Plaintiff, <br><br> vs. <br><br><br> GENESIS COMMUNICATIONS NETWORK, INC.; ALEX JONES; ERICA LAFFERTY; WILLIAM SHERLACH; ROBERT PARKER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; FRANCINE WHEELER; DAVID WHEELER; JENNIFER HENZEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; WILLIAM ALDENBERG, <br><br>             Defendants. | Case No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Plaintiff, West Bend Mutual Insurance Company ("West Bend"), by and through its undersigned counsel, hereby files this Complaint seeking a Declaratory Judgment against Genesis Communications Network, Inc. ("GCN") and Alex Jones, and states as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2. West Bend seeks a declaration that it owes neither a duty to defend nor a duty to indemnify to GCN or Jones with regard to the complaints filed in three related actions:

    A. *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S (Judicial District of Fairfield at Bridgeport) (attached hereto as Ex. A);

    B. *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046437-S (Judicial District of Fairfield at Bridgeport) (attached hereto as Ex. B);

    C. *Sherlach, et al, v. Jones, et al.*, No. X06-UWY-CV18-6046438-S (Judicial District of Fairfield at Bridgeport) (attached hereto as Ex. C).

3.    The three foregoing actions contain substantially identical claims and have been consolidated.  They are referred to herein as the "Underlying Lawsuits."

4.    As alleged herein, West Bend does not owe GCN or Jones a duty to defend or a duty to indemnify as to the Underlying Lawsuits.

## PARTIES

5.    West Bend is an insurance company organized and incorporated under the laws of Wisconsin with its principal place of business in West Bend, Wisconsin.  It is therefore a citizen of Wisconsin.

6.    GCN is a company organized and incorporated under the laws of Minnesota with its principal place of business in Burnsville, Minnesota.  It is therefore a citizen of Minnesota.

7.    Alex Jones resides in Austin, Texas.  He is therefore a citizen of Texas.

8.    Erica Lafferty resides in Litchfield County, Connecticut.  She is therefore a citizen of Connecticut.  Ms. Lafferty is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

9.    William Sherlach resides in Litchfield County, Connecticut.  He is therefore a citizen of Connecticut.  Mr. Sherlach is a claimant in two of the Underlying Lawsuits and is named herein solely as a potential interested party.

10.     Robert Parker resides in King County, Washington.  He is therefore a citizen of Washington.  Mr. Parker is a claimant in two of the Underlying Lawsuits and is named herein solely as a potential interested party.

11.     Jacqueline Barden resides in Litchfield County, Connecticut.  She is therefore a citizen of Connecticut.  Ms. Barden is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

12.     Mark Barden resides in Litchfield County, Connecticut.  He is therefore a citizen of Connecticut.  Mr. Barden is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

13.     Nicole Hockley resides in Litchfield County, Connecticut.  She is therefore a citizen of Connecticut.  Ms. Hockley is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

14.     Ian Hockley resides in Litchfield County, Connecticut.  He is therefore a citizen of Connecticut.  Mr. Hockley is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

15.     Francine Wheeler resides in Litchfield County, Connecticut.  She is therefore a citizen of Connecticut.  Ms. Wheeler is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

16.     David Wheeler resides in Litchfield County, Connecticut.  He is therefore a citizen of Connecticut.  Mr. Wheeler is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

17.     Jennifer Henzel resides in Litchfield County, Connecticut. She is therefore a citizen of Connecticut. Ms. Henzel is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

18.     Jeremy Richman resides in Litchfield County, Connecticut. He is therefore a citizen of Connecticut. Mr. Richman is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

19.     Donna Soto resides in Litchfield County, Connecticut. She is therefore a citizen of Connecticut. Ms. Soto is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

20.     Carlee Soto-Parisi resides in Litchfield County, Connecticut. She is therefore a citizen of Connecticut. Ms. Soto-Parisi is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

21.     Carlos M. Soto resides in Litchfield County, Connecticut. He is therefore a citizen of Connecticut. Mr. Soto is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

22.     Jillian Soto resides in Litchfield County, Connecticut. She is therefore a citizen of Connecticut. Ms. Soto is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

23.     William Aldenberg resides in Worchester County, Massachusetts. He is therefore a citizen of Massachusetts. Mr. Aldenberg is a claimant in one of the Underlying Lawsuits and is named herein solely as a potential interested party.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the plaintiff is a citizen of Wisconsin and all of the defendants are citizens of other states (Connecticut, Massachusetts, Minnesota, Texas and Washington).

25.     Additionally, the amount in controversy exceeds $75,000.00 exclusive of costs and interest.  In the Underlying Lawsuits addressed herein, the underlying claimants, who include family members of children and educators killed at Sandy Hook Elementary School, allege that they have suffered actual and substantial damages arising out of outrageous, malicious and deeply hurtful lies told by the underlying defendants, including GCN and Jones.  GCN and Jones have sought defense and indemnity for the Underlying Lawsuits from West Bend.

26.     This Court has jurisdiction over GCN because it conducts business in Connecticut, it allegedly distributed or published the alleged lies at issue in the Underlying Suits in Connecticut, it is a party to the Underlying Lawsuits which are pending in Connecticut and which allege that GCN engaged in tortious conduct in Connecticut, and it has sought insurance coverage via its Connecticut counsel from West Bend for the alleged tortious conduct.

27.     The Court has jurisdiction over Alex Jones because he conducts business in Connecticut, he has engaged in the persistent course of conduct described in the Underlying Lawsuits in Connecticut, he is a party to the Underlying Lawsuits which are pending in Connecticut and which allege that he engaged in tortious conduct, including invasion of privacy and intentional infliction of emotional distress, in Connecticut and outside of Connecticut, he derives substantial revenue from services rendered in Connecticut, he should reasonably expect that his acts have consequences in Connecticut, he derives substantial revenue from interstate

commerce, and he has sought insurance coverage via his Connecticut counsel from West Bend for his alleged tortious conduct.

28.     This Court has personal jurisdiction over all other defendants because they reside in Connecticut or because they are plaintiffs in the Underlying Lawsuits filed in Connecticut.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred here.

## BACKGROUND

**The Underlying Lawsuits**

30.     The Underlying Lawsuits were filed in May and July of 2018 and were subsequently consolidated.

31.     The claims in each Underlying Lawsuit are substantially the same.

32.     The plaintiffs in the Underlying Lawsuits are certain immediate family members of children and educators killed by Adam Lanza at Sandy Hook Elementary School in Newtown, Connecticut on December 14, 2012.

33.     The defendants in the Underlying Lawsuits are various individuals and entities, including GCN and Jones, alleged to have persistently perpetuated the lie that the Sandy Hook shooting was staged and that the families who lost loved ones that day are actors who faked their relatives' deaths.

34.     With regard to Jones, the complaints in the Underlying Lawsuits begin by alleging:

7.     Defendant Alex Jones is a conspiracy-theorist radio and internet personality who holds himself out as a journalist. He is the most prolific among those fabricators. But he does not act alone: along with his various business entities, Jones is the chief amplifier for a group that has worked in concert to create and propagate loathsome, false narratives about the Sandy Hook shooting and its victims, and promote their harassment and abuse.

8.      Jones, along with these others, has persisted in the perpetuation and propagation of this outrageous, deeply painful, and defamatory lie in the face of a mountain of evidence to the contrary, and with no supporting evidence.

9.      Alex Jones does not in fact believe that the Sandy Hook Shooting was a hoax—and he never has.

10.     Nevertheless, time and again, Jones has accused Sandy Hook families, who are readily identifiable, of faking their loved ones' deaths, and insisted that the children killed that day are actually alive.

11.     Jones has deliberately employed these false narratives about the Sandy Hook shooting, the victims, and their families as part of a marketing scheme that has brought him and his business entities tens of millions of dollars per year.

(Exs. A-C, ¶¶ 7-11)

35.     The complaints in the Underlying Lawsuits then proceed to describe the alleged offending conduct of Mr. Jones in extensive detail.

36.     Defendant GCN is alleged to be a distributor of the radio programs which broadcast and perpetuate the lies in question.  It is alleged to have participated in the conspiracy described in the complaints and to have independently distributed the publications described in the complaints.  (Ex. A, ¶¶ 38, 89; Ex. B, ¶¶ 33, 95; Ex. C, ¶¶ 33, 95).

37.     Count One in the complaints filed in the Underlying Lawsuits alleges a claim for Invasion of Privacy False Light/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having broadcast numerous outrageous lies about the underlying plaintiffs.  (Ex. A, ¶¶ 336-346; Ex. B, ¶¶ 416-426; Ex. C, ¶¶ 416-426).

38.     Count Two in the complaints filed in the Underlying Lawsuits alleges a claim for Defamation and Defamation *per se*/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having repeatedly published false statements asserting or reasonably understood to be asserting that the underlying plaintiffs' loved ones did not die; and/or that the episode in which they were killed was staged or their loved ones were still alive; and or the

underlying claimants were actors who faked their loved ones' deaths.  (Ex. A, ¶¶ 347-359; Ex. B, ¶¶ 427-439; Ex. C, ¶¶ 427-439).

39.     Count Three in the complaints filed in the Underlying Lawsuits alleges a claim for Intentional Infliction of Emotional Distress/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having broadcast a campaign of outrageous and false statements about the underlying claimants.  (Ex. A, ¶¶ 360-372; Ex. B, ¶¶ 440-452; Ex. C, ¶¶ 440-452).

40.     Count Four in the complaints filed in the Underlying Lawsuits alleges a claim for Negligent Infliction of Emotional Distress/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having mounted a campaign of outrageous, cruel and malicious lies. (Ex. A, ¶¶ 373-384; Ex. B, ¶¶ 453-464; Ex. C, ¶¶ 453-464).

41.     Count Five in the complaints filed in the Underlying Lawsuits alleges a claim under the Connecticut Unfair Trade Practices based on the underlying defendants, including GCN and Jones, having disseminated outrageous and malicious lies about the underlying claimants.  (Ex. A, ¶¶ 385-394; Ex. B, ¶¶ 465-474; Ex. C, ¶¶ 465-474).

**West Bend's Policies**

42.     West Bend issued to Genesis, Inc. (GCN) the following liability policies which have been attached hereto as Exhibits D through J ("the Policies"):

| Policy Number | Policy Period | Exhibit |
|---|---|---|
| CPO 0593558 10 | 4/22/12 to 4/22/13 | D |
| CPO 0593558 11 | 4/22/13 to 4/22/14 | E |
| CPO 0593558 12 | 4/22/14 to 4/22/15 | F |
| CPO 0593558 13 | 4/22/15 to 4/22/16 | G |
| CPO 0593558 14 | 4/22/16 to 4/22/17 | H |
| CPO 0593558 15 | 4/22/17 to 4/22/18 | I |
| CPO 0593558 16 | 4/22/18 to 4/22/19 | J |

43.     Insureds facing claims arising out of defamatory statements or invasion of privacy often seek coverage under the section of standard general liability policies that provides coverage for "personal and advertising injury," which addresses coverage for certain slander, libel and privacy claims.  In standard policies, such coverage would be found in "Coverage B."

44.     Importantly, however, due to the nature of GCN's business, the West Bend Policies are not standard and do not cover "personal and advertising injury" in any way.  This is established both in the Declarations, which indicate that such coverage is excluded, and also in the endorsement labeled "Exclusion—Personal and Advertising Injury."   The exclusion states, "Coverage B (Section 1) does not apply and none of the references to it in the Coverage Part apply."

45.     The Policies define "personal and advertising injury" (which is not covered) as:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.      False arrest, detention or imprisonment;
b.      Malicious prosecution;
c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;
f.      The use of another's advertising idea in your "advertisement"; or
g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

46.     As all such "personal and advertising injury" is excluded, the Policies do not provide any coverage for damages arising out of oral or written publication of material that slanders or libels a person, nor do they provide any coverage for oral or written publication of material that violates a right of privacy.

47.     While the Policies do not provide coverage for "personal and advertising injury," they do provide coverage for "bodily injury" or "property damage" occurring during the policy period and arising out of an "occurrence."  Such coverage is found in "Coverage A" and is subject to a number of definitions and exclusions which preclude coverage here.

48.     "Bodily injury" is defined in the Policies as:

"Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

49.     "Property damage" is defined in the Policies as:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

50.     "Occurrence" is defined in the Policies to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

51.     Coverage A in the Policies is subject to the Expected or Intended Injury Exclusion, which provides:

This insurance does not apply to:

**a.    Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

52.     Coverage A is also subject to the Personal and Advertising Injury Exclusion, which

provides:

This insurance does not apply to:

**o.     Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

53.     By endorsement, the Policies also set forth an exclusion for Designated

Professional Services, which bars coverage for "bodily injury" or "property damage" due to the

rendering of or failure to render any professional service.   The Schedule to the endorsement

describes the excluded professional services as "THE RADIO SYNDICATION OR

REPRODUCTION OVER THE AIRWAYS."

54.     In pertinent part, SECTION II—WHO IS AN INSURED provides:

1.     If you are designated in the Declarations as:

        ***
        d.     An organization other than a partnership, joint venture or limited
               liability company, you are an insured.  Your "executive officers"
               and directors are insureds, but only with respect to their duties as
               your officers or directors.  Your stockholders are also insureds, but
               only with respect to their liability as stockholders.

        ***
2.     Each of the following is also an insured:

        a.     Your "volunteer workers" only while performing duties related to
               the conduct of your business, or your "employees", other than
               either your "executive officers" (if you are an organization other
               than a partnership, joint venture or limited liability company) or
               your managers (if you are a limited liability company), but only for
               acts within the scope of their employment by you or while
               performing duties related to the conduct of your business.

        ***
No person or organization is an insured with respect to the conduct of any current
or past partnership, joint venture or limited liability company that is not shown as
a Named Insured in the Declarations.

11

55.     In    pertinent    part,    SECTION    IV—COMMERCIAL    GENERAL    LIABILITY CONDITIONS provides:

2.      Duties in the Event of Occurrence, Offense, Claim or Suit

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
        1) How, when and where the "occurrence" or offense took place;
        2) The names and addresses of any injured persons and witnesses; and
        3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
    b.  If a claim is made or "suit" is brought against any insured, you must:
        1) Immediately record the specifics of the claim or "suit" and the date received; and
        2) Notify us as soon as practicable.
        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
    c.  You and any other involved insured must:
        1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
        2) Authorize us to obtain records and other information;
        3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
        4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

56.     GCN requested coverage from West Bend for the Underlying Lawsuits shortly after they were filed, and West Bend fully denied coverage in June and July of 2018.

57.     Counsel for Alex Jones first asserted a claim for coverage under the West Bend policies by letter dated January 21, 2022, and West Bend fully denied coverage on February 23, 2022.

## COUNT I—DECLARATORY JUDGMENT
**(Declaration of No Duty to Defend as to GCN)**

58.    West Bend incorporates Paragraphs 1 through 57 above as though fully set forth herein.

59.    West Bend does not owe a duty to defend to GCN under the Policies for the Underlying Lawsuits for the following reasons:

A.  The Policies do not provide coverage for "personal and advertising injury," pursuant to the Declarations and the endorsement labeled "Exclusion—Personal and Advertising Injury."

B.  The complaints in the Underlying Lawsuits do not allege "bodily injury" or "property damage" arising out of an "occurrence."

C.  Even if the complaints in the Underlying Lawsuits did allege "bodily injury" (which West Bend expressly denies), the Personal and Advertising Injury Exclusion would bar coverage.

D.  Even if the complaints did allege "bodily injury" or "property damage" (which West Bend expressly denies), the Designated Professional Services Exclusion would bar coverage.

E.  The Expected or Intended Injury Exclusion bars coverage.

F.  West Bend also reserves the right to contend that the punitive damages sought by the underlying plaintiffs are uninsurable under the controlling state's law.

60.    Upon information and belief, GCN disputes West Bend's position that it does not owe a duty to defend for the Underlying Lawsuits.

61.     An actual controversy within the jurisdiction of this Court exists with respect to the allegations stated herein and with respect to the application of the terms, conditions, and exclusions of the Policies to the claims asserted in the Underlying Lawsuits.

## COUNT II—DECLARATORY JUDGMENT
### (Declaration of No Duty to Indemnify as to GCN)

62.     West Bend incorporates Paragraphs 1 through 57 above as though fully set forth herein.

63.     West Bend does not owe a duty to indemnify to GCN under the Policies for the Underlying Lawsuits for the following reasons:

A.  The Policies do not provide coverage for "personal and advertising injury," pursuant to the Declarations and the endorsement labeled "Exclusion—Personal and Advertising Injury."

B.  The complaints in the Underlying Lawsuits do not allege "bodily injury" or "property damage" arising out of an "occurrence."

C.  Even if the complaints in the Underlying Lawsuits did allege "bodily injury" (which West Bend expressly denies), the Personal and Advertising Injury Exclusion would bar coverage.

D.  Even if the complaints did allege "bodily injury" or "property damage" (which West Bend expressly denies), the Designated Professional Services Exclusion would bar coverage.

E.  The Expected or Intended Injury Exclusion bars coverage.

F.  West Bend also reserves the right to contend that the punitive damages sought by the underlying plaintiffs are uninsurable under the controlling state's law.

64.     Upon information and belief, GCN disputes West Bend's position that it does not owe a duty to indemnify for the Underlying Lawsuits.

65.     An actual controversy within the jurisdiction of this Court exists with respect to the allegations stated herein and with respect to the application of the terms, conditions, and exclusions of the Policies to the claims asserted in the Underlying Lawsuits.

## COUNT III—DECLARATORY JUDGMENT
### (Declaration of No Duty to Defend as to Alex Jones)

66.     West Bend incorporates Paragraphs 1 through 57 above as though fully set forth herein.

67.     West Bend does not owe a duty to defend to Alex Jones under the Policies for the Underlying Lawsuits for the following reasons:

A.  The Policies do not provide coverage for "personal and advertising injury," pursuant to the Declarations and the endorsement labeled "Exclusion—Personal and Advertising Injury."

B.  The complaints in the Underlying Lawsuits do not allege "bodily injury" or "property damage" arising out of an "occurrence."

C.  Even if the complaints in the Underlying Lawsuits did allege "bodily injury" (which West Bend expressly denies), the Personal and Advertising Injury Exclusion would bar coverage.

D.  Even if the complaints did allege "bodily injury" or "property damage" (which West Bend expressly denies), the Designated Professional Services Exclusion would bar coverage.

E.  The Expected or Intended Injury Exclusion bars coverage.

F.   Alex Jones does not qualify as an Insured as the complaints do not purport to sue him for acts within the scope of employment by GCN or for the performance of duties related to the conduct of GCN's business.

G.   Even if Alex Jones would otherwise qualify for coverage under the policies (which he does not), he forfeited any such coverage by breaching the conditions precedent in the policies by failing to provide timely notice to West Bend.  The suits in question have been pending since 2018 but Jones first provided notice to West Bend of his claim for coverage on January 21, 2022.  He also breached the policies by voluntarily making payments, assuming obligations or incurring expense without West Bend's consent, which further precludes coverage.

H.   West Bend also reserves the right to contend that the punitive damages sought by the underlying plaintiffs are uninsurable under the controlling state's law.

68.    Upon information and belief, Alex Jones disputes West Bend's position that it does not owe a duty to defend for the Underlying Lawsuits.

69.    An actual controversy within the jurisdiction of this Court exists with respect to the allegations stated herein and with respect to the application of the terms, conditions, and exclusions of the Policies to the claims asserted in the Underlying Lawsuits.

## COUNT IV—DECLARATORY JUDGMENT
### (Declaration of No Duty to Indemnify as to Alex Jones)

70.    West Bend incorporates Paragraphs 1 through 57 above as though fully set forth herein.

71.    West Bend does not owe a duty to indemnify to Alex Jones under the Policies for the Underlying Lawsuits for the following reasons:

A.  The Policies do not provide coverage for "personal and advertising injury," pursuant to the Declarations and the endorsement labeled "Exclusion—Personal and Advertising Injury."

B.  The complaints in the Underlying Lawsuits do not allege "bodily injury" or "property damage" arising out of an "occurrence."

C.  Even if the complaints in the Underlying Lawsuits did allege "bodily injury" (which West Bend expressly denies), the Personal and Advertising Injury Exclusion would bar coverage.

D.  Even if the complaints did allege "bodily injury" or "property damage" (which West Bend expressly denies), the Designated Professional Services Exclusion would bar coverage.

E.  The Expected or Intended Injury Exclusion bars coverage.

F.  Alex Jones does not qualify as an Insured as the complaints do not purport to sue him for acts within the scope of employment by GCN or for the performance of duties related to the conduct of GCN's business.

G.  Even if Alex Jones would otherwise qualify for coverage under the policies (which he does not), he forfeited any such coverage by breaching the conditions precedent in the policies by failing to provide timely notice to West Bend.  The suits in question have been pending since 2018 but Jones first provided notice to West Bend of his claim for coverage on January 21, 2022.  He also breached the policies by voluntarily making payments, assuming obligations or incurring expense without West Bend's consent, which further precludes coverage.

H.  West Bend also reserves the right to contend that the punitive damages sought by the underlying plaintiffs are uninsurable under the controlling state's law.

72.    Upon information and belief, Alex Jones disputes West Bend's position that it does not owe a duty to indemnify for the Underlying Lawsuits.

73.    An actual controversy within the jurisdiction of this Court exists with respect to the allegations stated herein and with respect to the application of the terms, conditions, and exclusions of the Policies to the claims asserted in the Underlying Lawsuits.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiff, West Bend Mutual Insurance Company, respectfully requests that declaratory judgment be entered in its favor and against the defendants as follows:

A.  Declaring that West Bend Mutual Insurance Company owes no duty to defend to Genesis Communications Network, Inc. for the Underlying Lawsuits;

B.  Declaring that West Bend Mutual Insurance Company owes no duty to indemnify to Genesis Communications Network, Inc. for the Underlying Lawsuits;

C.  Declaring that West Bend Mutual Insurance Company owes no duty to defend to Alex Jones for the Underlying Lawsuits;

D.  Declaring that West Bend Mutual Insurance Company owes no duty to indemnify to Alex Jones for the Underlying Lawsuits;

E.  Awarding West Bend Mutual Insurance Company the costs of this suit; and

F.  Awarding West Bend Mutual Insurance Company such other and further relief as this Court deems just.

Respectfully Submitted,

WEST BEND MUTUAL INSURANCE COMPANY

By:    /s/ Mark A. Milano (#CT01062)           
            One of Its Attorneys

Mark A. Milano (#CT01062)
Milano & Wanat LLC
471 East Main Street, Branford, CT 06405
(203) 315-7206
mmilano@mwllc.us

Daniel J. Cunningham (pending pro hac vice admission)
Tressler LLP
233 South Wacker Drive – 61st Floor
Chicago, Illinois 60606-6399
(312) 627-4000
dcunningham@tresslerllp.com