**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

WEST BEND MUTUAL INSURANCE
COMPANY,

             Plaintiff,

vs.
                                 Case No.: 3:22-cv-00478-VAB

GENESIS COMMUNICATIONS
NETWORK, INC. and ALEX JONES;

             Defendants.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR DEFAULT JUDGMENT AGAINST GENESIS COMMUNICATIONS**
**NETWORK, INC.**

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), plaintiff, West Bend Mutual Insurance Company ("West Bend"), respectfully submits this memorandum of law in support of its motion for default judgment against defendant Genesis Communications Network, Inc. ("GCN"). West Bend seeks a default judgment because GCN failed to answer or otherwise defend West Bend's Complaint against it.[1] The Court entered default against GCN on September 15, 2022. (Doc. No. 68).

West Bend alleged in its Complaint that it owed neither a duty to defend nor a duty to indemnify to GCN with regard to the complaints filed in three related actions ("the Underlying Lawsuits"):

---

[1] In a separate motion filed today, West Bend also seeks a default judgment against defendant Alex Jones.

A. *Lafferty, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046436-S (Judicial District of Fairfield at Bridgeport) (attached as Ex. A to the Complaint, Doc. No. 1-1)[2];

B. *Sherlach, et al. v. Jones, et al.*, No. X06-UWY-CV18-6046437-S (Judicial District of Fairfield at Bridgeport) (attached as Ex. B to the Complaint, Doc. No. 1-2);

C. *Sherlach, et al, v. Jones, et al.*, No. X06-UWY-CV18-6046438-S (Judicial District of Fairfield at Bridgeport) (attached as Ex. C to the Complaint, Doc No. 1-3).

The defendants in the three foregoing actions, including GCN, are alleged to have persistently perpetuated the lie that the Sandy Hook shooting was staged and that the families who lost loved ones that day are actors who faked their relatives' deaths.

After West Bend filed the instant action, the plaintiffs in the Underlying Lawsuits, withdrew all of their claims against GCN. Thus, GCN does not owe any damages in the Underlying Lawsuits, which moots any question as to a duty to indemnify as to GCN. As GCN sought a defense from West Bend, however, West Bend's claim in the instant action that it did not owe a duty to defend to GCN remains viable. West Bend therefore seeks a default judgment against GCN declaring that West Bend did not owe it a duty to defend with regard to the Underlying Lawsuits.

## **PROCEDURAL BACKGROUND**

West Bend commenced this action by filing its complaint on April 1, 2022. (Doc. No. 1.) On April 4, 2022, pursuant to Fed. R. Civ. P. 4(d), West Bend notified GCN in writing that the action had been commenced and requested that GCN waive service of summons. See Affidavit of Daniel J. Cunningham ("Cunningham Aff.") ¶ 3) submitted herewith. Shortly thereafter, West Bend received from GCN a fully executed Waiver of Service of Summons ("Waiver"). (See Doc.

---

[2] Unless otherwise noted, the exhibits referenced herein are the exhibits to West Bend's Complaint, Doc. Nos. 1-1 through 1-10. Page references are to the page number added by the court's electronic filing system.

No. 17.)  The Waiver was signed by Ted Anderson, GCN's president.  (*See id.*)  The signed Waiver acknowledged receipt of West Bend's request to waive service of summons along with a copy of the complaint, two copies of the waiver form, and a prepaid means of returning one signed copy of the form.  (*See id.*)  The Waiver also acknowledged that GCN was required to file and serve an answer or a motion under Rule 12 within 60 days from April 4, 2022 (which was June 3, 2022) and that failure to do so would result in entry of a default.  (*See id.*)  GCN never appeared, answered, or otherwise moved in this action.

On August 26, 2022, West Bend filed its Request to Enter Default as to GCN.  (See Doc. No. 66).  The Court entered default against GCN on September 15, 2022.  (See Doc. No. 68.)

Out of an abundance of caution, West Bend also originally named the underlying claimants as defendants in this action, including Erica Lafferty, William Sherlach, Robert Parker, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Francine Wheeler, David Wheeler, Jennifer Henzel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, and William Aldenberg (collectively the "Underlying Claimants").  They waived service, and counsel appeared on their behalf.  (See Doc. Nos. 11-16, 18-26, 28-57, 71.)  However, through their counsel, the Underlying Claimants ultimately informed West Bend that they did not wish to participate in this declaratory judgment action.  (See Doc. No. 72-1, ¶ 4.)  West Bend therefore entered a Stipulation to Be Bound with the Underlying Claimants in which they agreed to be bound by any judgments (including default and declaratory judgments) entered by the Court resolving West Bend's contentions that it owes neither a duty to defend nor a duty to indemnify to any party to the Underlying Lawsuits.  (Doc. No. 72-1.)  Pursuant to that Stipulation, West Bend then Voluntarily dismissed the Underlying Claimants from this action.  (Doc. No. 72.)

## FACTUAL BACKGROUND

**The Underlying Lawsuits**

The Underlying Lawsuits were filed in May and July of 2018 and were subsequently consolidated. (*See* Complaint, Doc. No. 1, ¶ 30.) The claims in each Underlying Lawsuit are substantially the same. (*See id.*, ¶ 31.) The Underlying Claimants are certain immediate family members of children and educators killed by Adam Lanza at Sandy Hook Elementary School in Newtown, Connecticut on December 14, 2012. (*See id.*, ¶ 32.)

The complaints in the Underlying Lawsuits begin by alleging:

7.       Defendant Alex Jones is a conspiracy-theorist radio and internet personality who holds himself out as a journalist.  He is the most prolific among those fabricators.  But he does not act alone:  along with his various business entities, Jones is the chief amplifier for a group that has worked in concert to create and propagate loathsome, false narratives about the Sandy Hook shooting and its victims, and promote their harassment and abuse.

8.       Jones, along with these others, has persisted in the perpetuation and propagation of this outrageous, deeply painful, and defamatory lie in the face of a mountain of evidence to the contrary, and with no supporting evidence.

9.       Alex Jones does not in fact believe that the Sandy Hook Shooting was a hoax—and he never has.

10.      Nevertheless, time and again, Jones has accused Sandy Hook families, who are readily identifiable, of faking their loved ones' deaths, and insisted that the children killed that day are actually alive.

11.      Jones has deliberately employed these false narratives about the Sandy Hook shooting, the victims, and their families as part of a marketing scheme that has brought him and his business entities tens of millions of dollars per year.

(*See id.*, ¶ 34; *See* Complaint, Exhibits A-C ¶¶ 7-11.)

Defendant GCN is alleged to be a distributor of the radio programs which broadcast and perpetuate the lies in question. (*See id.*, ¶ 36).  It is alleged to have participated in the conspiracy

4

described in the complaints and to have independently distributed the publications described in the complaints.  (*See id.*, ¶ 36; Ex. A, ¶¶ 38, 89; Ex. B, ¶¶ 33, 95; Ex. C, ¶¶ 33, 95.)

Count One in the complaints filed in the Underlying Lawsuits alleges a claim for Invasion of Privacy False Light/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having broadcast numerous outrageous lies about the underlying plaintiffs.  (*See id.*, ¶ 37; *See* Complaint Ex. A, ¶¶ 336-46; Ex. B, ¶¶ 416-26; Ex. C, ¶¶ 416-26.)

Count Two in the complaints filed in the Underlying Lawsuits alleges a claim for Defamation and Defamation *per se*/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having repeatedly published false statements asserting or reasonably understood to be asserting that the underlying plaintiffs' loved ones did not die; and/or that the episode in which they were killed was staged or their loved ones were still alive; and or the underlying claimants were actors who faked their loved ones' deaths.  (*See id.*, ¶ 38; Ex. A, ¶¶ 347-59; Ex. B, ¶¶ 427-39; Ex. C, ¶¶ 427-39.)

Count Three in the complaints filed in the Underlying Lawsuits alleges a claim for Intentional Infliction of Emotional Distress/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having broadcast a campaign of outrageous and false statements about the underlying claimants.  (*See id.*, ¶ 39; *See* Complaint Ex. A, ¶¶ 360-72; Ex. B, ¶¶ 440-52; Ex. C, ¶¶ 440-52.)

Count Four in the complaints filed in the Underlying Lawsuits alleges a claim for Negligent Infliction of Emotional Distress/Civil Conspiracy based on the underlying defendants, including GCN and Jones, having mounted a campaign of outrageous, cruel and malicious lies.  (*See id.*, ¶ 40; *See* Complaint Ex. A, ¶¶ 373-84; Ex. B, ¶¶ 453-64; Ex. C, ¶¶ 453-64.)

Count Five in the complaints filed in the Underlying Lawsuits alleges a claim under the Connecticut Unfair Trade Practices based on the underlying defendants, including GCN and Jones, having disseminated outrageous and malicious lies about the underlying claimants.  (*See id.*, ¶ 41; *See* Complaint Ex. A, ¶¶ 385-94; Ex. B, ¶¶ 465-74; Ex. C, ¶¶ 465-74.)

On June 30, 2022, the Underlying Claimants in all three Underlying Lawsuits withdrew their claims against GCN.  (*See* Cunningham Aff., ¶ 11, Ex. 1 )

**The Policies**

West Bend issued to Genesis, Inc. (GCN) the following liability policies ("the Policies"):

| Policy Number | Policy Period | Complaint Exhibit |
|---|---|---|
| CPO 0593558 10 | 4/22/12 to 4/22/13 | D (Doc. No. 1-4) |
| CPO 0593558 11 | 4/22/13 to 4/22/14 | E (Doc. No. 1-5) |
| CPO 0593558 12 | 4/22/14 to 4/22/15 | F (Doc. No. 1-6) |
| CPO 0593558 13 | 4/22/15 to 4/22/16 | G (Doc. No. 1-7) |
| CPO 0593558 14 | 4/22/16 to 4/22/17 | H (Doc. No. 1-8) |
| CPO 0593558 15 | 4/22/17 to 4/22/18 | I (Doc. No. 1-9) |
| CPO 0593558 16 | 4/22/18 to 4/22/19 | J (Doc. No. 1-10) |

(*See* Complaint, Doc. No. 1, ¶ 42, Exhibits D through J.)  Each policy is subject to a $1 million each occurrence limit and a $1 million general aggregate limit.  With regard to the provisions at issue in West Bend's Complaint, the Policy language is the same in each policy.

Subject to certain definitions, exclusions, and conditions, the Policies provide coverage for "bodily injury" and "property damage." (*See id.*, ¶¶ 47-48.) Importantly, unlike some policies available in the insurance market, the Policies at issue in this action do not provide any coverage for "personal and advertising injury."  (*See id.*, ¶¶ 43-44.)  The relevant policy provisions are set forth in the Complaint and below in the discussion of each of West Bend's contentions as to why it could not owe a duty to defend to GCN.

GCN requested coverage from West Bend for the Underlying Lawsuits shortly after they were filed, and West Bend fully denied coverage in June and July of 2018.  (*See id.*, ¶ 56.)

## BASIS FOR FEDERAL JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the plaintiff is a citizen of Wisconsin and all of the defendants are citizens of other states (Connecticut, Massachusetts, Minnesota, Texas and Washington).  (*See* Complaint, ¶¶ 4-24.) Additionally, the amount in controversy exceeds $75,000.00 exclusive of costs and interest. (*See id.*, ¶ 25).

## DEFAULT JUDGMENT STANDARD

A two-step process applies when a party seeks a default judgment under Rule 55.  *Priestly v. Headminder*, 647 F.3d 497, 504 (2d Cir. 2011).  The plaintiff must first obtain an entry of default by demonstrating that the defaulting party "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Rule 55(a) empowers the clerk of the court to enter such a default.  *Priestly*, 647 F.3d at 504-05.  Second, the plaintiff must seek a default judgment under Rule 55(b).  *Id.* at 505.

In evaluating a motion for default judgment, a court must accept all of the plaintiff's factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether the plaintiff's allegations establish its case as a matter of law.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  Where, as here, the plaintiff does not seek monetary relief and instead seeks only a declaratory judgment as to the lack of any duty to defend or indemnify under an insurance policy, the court must determine from the facts alleged whether the policy provides coverage to the insured.  *See United Property and Casualty Ins. Co. v. Hillgen-Santa, et al.*, No. 3:21-cv-00543-VAB, 2022 WL 2596623, *5 (D. Conn. August 23, 2022);

*Metropolitan Property & Casualty Ins. Co. v. Sisbarro*, No. 3:13-cv-537 (MPS), 2015 WL 893328, *7 (D. Conn. March 2, 2015).

## ARGUMENT

**A.     As There Is No Conflict of Laws, The Court Need Not Make a Choice of Law.**

The Policies indicate on their face that they were issued to GCN in Minnesota.  (*See* Complaint, Exhibits D through J all at p. 3.)  GCN is incorporated in Minnesota.  (*See* Complaint, ¶ 6).  The Underlying Lawsuits are pending in Connecticut, and the forum for the instant action is obviously in Connecticut.  The Court, however, need not make a choice of law unless there is an outcome determinative conflict of laws.  *Lumbermens Mut. Cas. Co. v. Dillon Company, Inc.*, 9 Fed.Appx. 81, 83 (2d Cir. 2001); *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, No. 3:210CV00640(SALM), 2022 WL 603028, *3-4 (D. Conn. March 1, 2022).

There is no outcome determinative conflict between the law of Connecticut and the law of Minnesota.  Under both Connecticut and Minnesota law, coverage issues are generally questions of law.  *See Hillgen-Santa* at *6; *Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 773-74 (Minn. Ct. App. 1998).  In both states, insurance policies are governed by the same general principles that govern the construction of any written contract.  *See Hillgen-Santa* at *6; *Carlson Marketing Group, Inc. v. Royal Indemnity Co.*, et al., 517 F. Supp. 2d 1089, 1096 (D. Minn. 2007).  If the policy terms are clear and unambiguous, the language must be accorded its natural and ordinary meaning.  *See Hillgen-Santa* at *6; *C.S. McCrossan, Inc. v. Federal Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019).  Connecticut and Minnesota courts do not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.  *See Hillgen-Santa* at *6; *Ross v. City of Minneapolis*, 408 N.W.2d 910, 914 (Minn. Ct. App. 1987).  In both states, the insured party bears the initial burden of demonstrating coverage, and the insurer bears the burden

of establishing any applicable exclusions.  *See Yale University v. Cigan Ins. Co.*, 224 F. Supp. 2d

402, 411-12 (D. Conn. 2002); *C.S. McCrossan*, 932 F.3d at 1145.

The two states similarly construe the duties to defend and indemnify.  The former duty is

triggered if the allegations in the complaint possibly fall within the coverage.  *See Hillgen-Santa*

at *6; *Travelers Property Cas. Co. of America v. General Cas. Ins. Companies*, 465 F.3d 900, 903

(8th Cir. 2006).  The duty to indemnify is narrower than the duty to defend.  See *Hillgen-Santa* at

*6; *Nelson v. American Home Ins. Co.*, 824 F. Supp. 2d. 909, 915 (D. Minn. 2011).  An insurer

that does not owe a duty to defend cannot owe a duty to indemnify.  *See Hillgen-Santa* at *6;

*Selective Ins. Co. of America v. Smart Candle, LLC*, 781 F.3d 983, 985 (8th Cir. 2015).

**B.      West Bend Did Not Owe GCN a Duty to Defend.**

**1.      The Policies Do Not Cover Any "Personal and Advertising Injury."**

The Policies define "personal and advertising injury" as follows:

> "Personal and advertising injury" means injury, including consequential
> "bodily injury", arising out of one or more of the following offenses:
>
> a.    False arrest, detention or imprisonment;
> b.    Malicious prosecution;
> c.    The wrongful eviction from, wrongful entry into, or invasion of the
>        right of private occupancy of a room, dwelling or premises that a
>        person occupies, committed by or on behalf of its owner, landlord
>        or lessor;
> d.    Oral or written publication, in any manner, of material that slanders
>        or libels a person or organization or disparages a person's or
>        organization's goods, products or services;
> e.    Oral or written publication, in any manner, of material that violates
>        a person's right of privacy;
> f.    The use of another's advertising idea in your "advertisement"; or
> g.    Infringing upon another's copyright, trade dress or slogan in your
>        "advertisement".

(*See* Complaint, Doc. No. 1, ¶ 45; Ex. D at 31, Ex. E at 35, Ex. F at 31, Ex. G at 31, Ex. H

at 36, Ex. I at 36, Ex. J at 37.)

Importantly, the foregoing definition exists in the Policies not for purposes of providing coverage for "personal and advertising injury" but for purposes of fully excluding coverage for it. This is established both in the Declarations, which indicate that such coverage is "EXCLUDED" (*See* Complaint, ¶ 44; Ex. D at 6, Ex. E at 5, Ex. F at 6, Ex. G at 6, Ex. H at 19, Ex. I at 19, Ex. J at 19.) and also in the endorsement labeled "Exclusion—Personal and Advertising Injury." (*See id.*; Ex. D at 37, Ex. E at 41, Ex. F at 37, Ex. G at 37, Ex. H at 41, Ex. I at 41, Ex. J at 43.)  That exclusion states, "Coverage B (Section 1) does not apply and none of the references to it in the Coverage Part apply."  (*See id.*)

As all "personal and advertising injury" is excluded, the Policies do not provide any coverage for damages arising out of oral or written publication of material that slanders or libels a person, nor do they provide any coverage for oral or written publication of material that violates a right of privacy.  (*See id*, ¶ 46).  As the damages sought in the Underlying Lawsuits all arise out of defamation, invasion of privacy, and the resulting emotional distress, the deletion of all coverage for "personal and advertising injury" effectively precludes even the possibility of coverage here. West Bend therefore did not and cannot owe a duty to defend to GCN.

## 2.   The Underlying Lawsuits Do Not Allege "Bodily Injury" or "Property Damage."

While the Policies do not provide coverage for "personal and advertising injury," they do provide coverage for "bodily injury" or "property damage" occurring during the policy period and arising out of an "occurrence."  Such coverage is found in "Coverage A," which defines "bodily injury" as:

> "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

(*See* Complaint, ¶ 48; Ex. D at 30, Ex. E at 34, Ex. F at 30, Ex. G at 30, Ex. H at 35, Ex. I at 35, Ex. J 35.)    The Underlying Lawsuits do not allege bodily injury, sickness or disease, and the

definition of "bodily injury" is therefore not satisfied.  Notably, two Connecticut Superior Court decisions have reached this very conclusion upon evaluation of the very same Underlying Lawsuits as are at issue in the instant action.  See *USAA General Indem. Co. v. Sklanka*, No. UWYCV196048058S, 2020 WL 1932359, *3 (Superior Court, Waterbury, March 17, 2020) (discussing *Lafferty*);  *USAA General Indem. Co. v. Sklanka*, No. 196048057S, 2020 WL 3790745, *3 (Superior Court, Waterbury, June 5, 2020) (discussing *Sherlach*).  Both cases found that instead of involving "bodily injury," the complaints in the Underlying Lawsuits alleged that the plaintiffs suffered harassment, potential violence, actual and substantial damages, and emotional distress. *Id.*  They also noted that the Connecticut Supreme Court has repeatedly held that emotional distress without physical harm does not  constitute "bodily injury" as defined by an insurance policy.  *Id. citing Taylor v. Mucci*, 288 Conn. 379, 385-86, 952 A.2d 776 (2008).  Minnesota law is no different.  *See e.g., Garvis v. Demuth, Jr.*, 497 N.W.2d 254, 256-58 (Minn. 1993).  As there are no allegations of actual physical harm in the Underlying Lawsuits, the definition of "bodily injury" is not satisfied.

The definition of "property damage" is also not satisfied here.  That term is defined as:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(*See* Complaint, ¶ 49; Ex. D at 32, Ex. E at 36, Ex. F at 32, Ex. G at 32, Ex. H at 37, Ex. I at 37, Ex. J at 37-38.)  The Underlying Lawsuits do not allege physical injury to tangible property, nor do they allege loss of use of tangible property that is not physically injured.  As such, the definition of "property damage" is not satisfied.  In combination with the fact that "bodily injury" is not alleged, there are no allegations that even potentially trigger Coverage A, and West Bend therefore cannot owe a duty to defend GCN.

### 3. Even If the Underlying Lawsuits Did Allege "Bodily Injury," Coverage Would Be Excluded by Coverage A's Personal and Advertising Injury Exclusion.

In the unlikely event that the Underlying Lawsuits are construed as alleging "bodily injury," West Bend still would not owe a duty to defend under Coverage A because that coverage is subject to its own Personal and Advertising Injury Exclusion, which provides:

This insurance does not apply to:

### o. Personal and Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

(*See* Complaint, ¶ 52; Ex. D at 22, Ex. E at 26, Ex. F at 22, Ex. G at 22, Ex. H at 27, Ex. I at 27, Ex.  J at 27.)

If the emotional distress alleged in the Underlying Lawsuits is somehow deemed to be "bodily injury," the foregoing exclusion would be triggered because any emotional distress alleged in the complaint is alleged to arise out of defamation and invasion of privacy, which are offenses falling within the definition of "personal and advertising injury."  Indeed, the Underlying Claimants connect their emotional injury to the defendants' "personal and advertising injury" offenses when they allege, "[t]he defendants' campaign of outrageous, cruel, and malicious lies created an unreasonable risk of causing the plaintiff's emotional distress."  *See* Complaint, Ex. A, ¶ 374; Ex. B, ¶ 454; Ex. C, ¶ 454.)  As there is no emotional distress alleged which is unrelated to

the offenses identified in the "personal and advertising injury" definition, the exclusion would

fully bar coverage, in the unlikely event the alleged emotional distress qualifies as "bodily injury."

4.    **Even If the Underlying Lawsuits Did Allege "Bodily Injury" or "Property Damage," the Designated Professional Services Exclusion Would Bar Coverage.**

By endorsement, the Policies also set forth an exclusion for Designated Professional

Services, which bars coverage for "bodily injury" or "property damage" due to the rendering of or

failure to render any professional service.  The Schedule to the endorsement describes the excluded

professional services as "THE RADIO SYNDICATION OR REPRODUCTION OVER THE

AIRWAYS."  (*See* Complaint, ¶ 53; Ex. D at 9, Ex. E at 13, Ex. F at 9, Ex. G at 9, Ex. H at 40,

Ex. I at 40, Ex. J at 42.)

The Underlying Lawsuits expressly allege that GCN "distributes radio programs produced

by Alex Jones and Infowars…"  (*See* Complaint Ex. A, ¶ 38; Ex. B, ¶ 33; Ex. C, ¶ 33.)  They also

allege that GCN participated in the conspiracy and independently distributed the publications

alleged in the Underlying Lawsuits.  (*See* Complaint Ex. A, ¶ 89; Ex. B, ¶ 95; Ex. C at ¶ 95.)

According to the Underlying Lawsuits, the defendants, including GCN, "broadcast" their

outrageous, cruel and malicious lies.  (*See* Complaint Ex. A, ¶ 343, Ex. B, ¶ 423; Ex. C, ¶ 423.)

They further allege that the defamatory publications were broadcast to millions of people.  (*See*

Complaint Ex. A, ¶ 352; Ex. B, ¶ 432; Ex. C, ¶ 432.)  These allegations place the Underlying

Lawsuits squarely within the Designated Professional Services exclusion.  As noted, the excluded

professional service identified in that exclusion is radio syndication or reproduction over the

airways.  GCN's alleged liability arises entirely out of its conduct in the performance that excluded

professional service.  Based on the allegations in the Underlying Lawsuits, there is no doubt that

13

GCN was sued due to its rendering of professional services involving radio syndication or reproduction over the airways.  West Bend therefore cannot owe a duty to defend.

> **5.**     **Even If the Underlying Lawsuits Did Allege "Bodily Injury" or "Property Damage," Coverage Would Be Excluded by the Definition of Occurrence and the Expected or Intended Injury Exclusion.**

The allegations of intentional injury in the Underlying Lawsuits would also bar even the potential for coverage, if the definitions of "bodily injury" and "property damage" are somehow deemed satisfied.  "Occurrence" is defined in the Policies to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*See* Complaint, ¶ 50; Ex. D at 31, Ex. E at 35, Ex. F at 31, Ex. G at 31, Ex. H at 36, Ex. I at 36,  Ex. J at 37.)  Coverage A in the Policies is also subject to the Expected or Intended Injury Exclusion, which provides:

> This insurance does not apply to:
>
> **a.**     **Expected or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(*See* Complaint, ¶ 51; Ex. D at 19, Ex. E at 23, Ex. F at 19, Ex. G at 19, Ex. H at 24, Ex. I at 24, Ex. J at 24.)

Based on the foregoing provisions, intentional "bodily injury" or "property damage" inflicted on others falls outside the Policies' scope.  *See e.g. Hillgen-Santa*, 2022 WL 3596623, *7 (holding that coverage for any "bodily injury" or "property damage" was barred because the claimants alleged that the insureds intentionally engaged in conduct that they expected or intended would result in the alleged harm.)  The Complaints in the Underlying Lawsuits expressly allege that the defendants, including GCN, knew that their publications could cause the plaintiffs to suffer

harassment and potential violence.  (*See* Complaint Ex. A, ¶ 341, Ex. B, ¶ 421, Ex. C, ¶ 421.)  They

also allege that the defendants had knowledge that their statements were lies.  (*See* Complaint Ex.

A, ¶ 339; Ex. B, ¶ 419, Ex. C, ¶ 419.)  In light of the intentionally harmful nature of the defendants'

acts, the damages alleged fall outside the scope of the policies.  This is true even though one of the

claims (Count Four) alleges negligent infliction of emotional distress.  Claims which are framed

in terms of negligence are not covered when they are based on a series of intentional harmful acts.

*See e.g. Hillgen-Santa*, 2022 WL 3596623, *7; *Sklanka*, 2020 WL 1932359, at footnote 3 (merely

affixing the label "negligent" does not transform intentional conduct into negligent behavior);

*Sklanka*, 2020 WL 3790745, at footnote 3 (same).  West Bend therefore cannot owe a duty to

defend to GCN.

## <u>CONCLUSION</u>

For the reasons stated above, West Bend Mutual Insurance Company requests that the

Court enter a Default Judgment against Genesis Communications Network, Inc. in substantial

conformity with the attached proposed Default Judgment.

Respectfully Submitted,

WEST BEND MUTUAL INSURANCE COMPANY

By:____/s/  Daniel J. Cunningham_____
One of Its Attorneys
Daniel J. Cunningham (admitted pro hac vice)
Tressler LLP
233 South Wacker Drive – 61st Floor
Chicago, Illinois 60606-6399
(312) 627-4000
dcunningham@tresslerllp.com

Mark A. Milano (#CT1062)
Milano & Wanat LLC
471 East Main Street, Branford, CT 06405
(203) 315-7206
Mmilano@mwllc.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Clerk of the

Court using the ECF system which will send notice of such filing to all counsel of record.

Dated: October 14, 2022

/s/Daniel J. Cunningham